UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-123-GFVT

JAMES PHELPS, PLAINTIFF,

V.  **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

MICHAEL J. ASTRUE,
Commissioner of Social Security, DEFENDANT.

## I. INTRODUCTION

Plaintiff, James Phelps, brings this action under 42 U.S.C. § 405(g) and 5 U.S.C. § 706, to challenge the Defendant Commissioner's final decision denying his application for Supplemental Security Income ["SSI"]. [R. 1]. This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [R. 13]. Now ripe for decision on the parties' motions for summary judgment, and for the reasons set forth herein, it is recommended that Phelps' Motion for Summary Judgment [R. 10] be denied, Defendant Commissioner's Motion for Summary Judgment [R. 12] be granted, and Judgment be entered affirming the final decision of the Commissioner.

## II. FACTS & PROCEDURAL HISTORY

The Plaintiff was born in 1965 and was thirty-five (35) years old at the alleged onset date of his disability. [Tr. 65]. He lives with his wife, Rhonda Barnes. [Tr. 448]. Phelps has a sixth grade education, and can read "very little." [Tr. 448]. He lists his employment history as follows: a

sawmill worker during an unspecified period of time, and a mechanic and groundman at Phelps Powerline Construction, Inc. from 1989-2001. [Tr. 90].

Phelps alleges that his disability began on August 17, 2000. [Tr. 65]. In the Disability Report, Form SSA-3368, he claimed that he was unable to work as a result of a back injury. [Tr. 99]. Phelps complains of severe pain in his lower back and left leg due to a work-related injury, as well as depression. [Tr. 455, 452].

As a result of his impairments, the Plaintiff filed for disability benefits on June 12, 2002. [Tr. 65-67]. His claims were denied initially and on reconsideration. [Tr. 49, 50]. Following the denial, he properly requested a hearing in front of an Administrative Law Judge ["ALJ"]. [Tr. 61-62]. On April 19, 2005, a hearing was held in front of ALJ James Sparks in London, Kentucky. [Tr. 425]. During the hearing, the ALJ sought testimony from Phelps and a vocational expert. [Id.]

The ALJ ruled against the Plaintiff in a written decision dated July 29, 2005. [Tr. 319-325]. Phelps appealed to the Appeals council, contending that the ALJ erroneously found that his subjective complaints were not credible, and erroneously rejected the findings of his treating physician, Dr. Patrick Jenkins. [Tr. 326]. The Appeals Council reversed, concluding that the ALJ's determination of Phelps' residual functional capacity ["RFC"] was inconsistent with his finding that Phelps could perform light work activity, and that the ALJ did not specifically reject Dr. Jenkins' opinion as being inconsistent with the record. [Tr. 330]. The Appeals Council remanded the action for further consideration, and directed the ALJ to request an updated report from Dr. Jenkins. [Tr. 331]. The Appeals Council noted, however, that the ALJ could enlist the assistance of counsel in obtaining updated information from the examining sources. [Id.]. Subsequently, Counsel for the Plaintiff submitted for the ALJ's consideration an updated RFC assessment completed by Dr.

2

Jenkins.  [see Tr. 415-17; 391-92].

In accordance with the Appeals Council's remand order, a second evidentiary hearing was held before ALJ Frank Letchworth on March 1, 2007.  [Tr. 443].  The Plaintiff was present and represented by counsel, the Hon. Elizabeth Broyles.  [Id.].  During the hearing, the ALJ sought testimony from Phelps and vocational expert William Ellis.  [Tr. 444].

Following the hearing, the ALJ ruled against Phelps in a written decision dated May 16, 2007. [Tr. 19-30].  The ALJ found that the Plaintiff suffered from the combined severe impairments of degenerative disc disease of the lumbar spine and depression.  [Tr. 22].  Despite these impairments, the ALJ found that Phelps "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  [Tr. 24].  Continuing with his evaluation, the ALJ found that the Plaintiff had the residual functional capacity to:

> perform work at the sedentary exertional level.  He can perform no more than occasional balancing, stooping, bending, twisting, and reaching from the floor to waist.  As a result of his moderate pain, the claimant has a limited but satisfactory ability to concentrate.  The claimant can perform no work where reading is an essential element.

[Tr. 25].  The ALJ found that Phelps was unable to perform any past relevant work [Tr. 28], but that "[c]onsidering [his] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform."  [Tr. 29].  Based on these findings, the ALJ determined that the Plaintiff did not suffer from a "disability" as defined by the Social Security Act.  [Id.].  The Appeals Council denied Phelps' request for review on February 14, 2008.  [Tr. 10-13].

On April 14, 2008, Phelps initiated the present action by filing a complaint in the U.S.

District Court for the Eastern District of Kentucky. [R. 1]. In his motion for Summary Judgment [R. 10], Phelps argues that the Court should reverse the ALJ's decision because: (1) the ALJ improperly rejected the opinion of his treating physician, Dr. Jenkins, (2) the ALJ did not perform a proper evaluation of his credibility, (3) the ALJ failed to properly evaluate his mental impairments, and (4) the ALJ's findings are not supported by substantial evidence. [R. 10-2]. The Defendant Commissioner responds that the ALJ complied with the applicable regulations and case law, and his decision is supported by substantial evidence. [R. 12 at 1, 7].

### III.  STANDARD OF REVIEW

A reviewing court must uphold the findings of the ALJ if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2006); see also, Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981). The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004) (internal quotations and citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Hogg v. Sullivan, 987 F.2d 328, 331 (6th Cir. 1993).

The limited nature of substantial evidence review is intended to prevent the reviewing court from substituting its judgment for that of the ALJ. So long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." Longworth v. Comm'r Soc. Sec. Admin., 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations and citations omitted). Sixth Circuit precedent suggests that a finding of "no substantial evidence," and potential reversal of the agency decision,

would be appropriate in situations where the ALJ: ignores uncontested, compelling evidence for one side; makes no express findings on witness credibility; or makes a ruling based on facts with "little if any evidentiary value." Noe v. Weinberger, 512 F.2d 588 (6th Cir. 1975); see also, Glass v. Sec'y of Health, Educ. & Welfare, 517 F.2d 224 (6th Cir. 1975). Otherwise, if there is substantial evidence to support the ALJ's decision, "it must be affirmed even if the reviewing court would decide the matter differently." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994).

## IV.  ANALYSIS

In the present action, the Plaintiff argues that the ALJ's decision should be reversed because: (1) the ALJ improperly rejected the opinion of his treating physician, Dr. Jenkins, (2) the ALJ did not perform a proper evaluation of his credibility, (3) the ALJ failed to properly evaluate his mental impairments, and (4) the ALJ's findings are not supported by substantial evidence. [R. 10-2]. The Court will address each contention in turn.

### A.  THE ALJ'S REJECTION OF THE TREATING PHYSICIAN'S OPINION

The Plaintiff contends that the ALJ improperly rejected the opinion of his treating physician, Dr. Jenkins. Dr. Jenkins completed an RFC assessment of Phelps on February 26, 2007. [Tr. 374-392]. On the RFC Questionnaire, Dr. Jenkins selected the greatest degree of limitation for each category, and opined that Phelps was "totally disabled." [Tr. 391-92]

Under the "treating physician rule," an ALJ generally must give "greater weight" to the opinions of treating physicians than those of other physicians. See Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 536 (6th Cir. 1981). Such deference is only accorded, however, when the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case

5

record." Gaskin v. Commissioner of Social Sec., 280 Fed.Appx. 472, 474 (6th Cir. 2008) (unpublished) (citing 20 C.F.R.§ 404.1527(d)(2)).

When the ALJ rejects the opinion of a treating physician, he must give good reasons for doing so. See Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242 (6th Cir. 2007). The SSA regulations set forth certain factors the ALJ must consider: (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the treating physician's opinion, (4) the consistency of the physician's opinion with the record as a whole, and (5) the specialization of the physician. 20 C.F.R.§ 1527(d)(2). This reason-giving requirement serves two purposes:

> First, the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. Second, the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule.

Rogers at 242-43.

The Court concludes that the ALJ articulated good reasons for discounting Dr. Jenkins' opinion, and thus complied with the treating physician rule. In rejecting the opinion of Dr. Jenkins, the ALJ focused on the third and fourth factors set forth above, supportability and consistency with the record. For instance, the ALJ noted that Dr. Jenkins' opinion "was predicated on a diagnosis of disc disease rather than objective findings," and thus accorded it little weight. [Tr. 28]. Further, the ALJ concluded that Dr. Jenkins' opinion was inconsistent with other, substantial evidence of record. [Id.]. In this regard, the ALJ cited numerous instances in which consultative examiners reported findings that were inconsistent with Dr. Jenkins' opinion. The following is a brief summary of the

6

findings cited by the ALJ:

    1.  <u>Consultative Examiner, Dr. William Brookes</u>

Dr. Brookes, a neurosurgeon, examined the Plaintiff upon the request of Dr. Jenkins. [R. 10-2 at 3]. He documented his findings in a report dated January 28, 2002. [Tr. 174-75]. Following Dr. Brookes' examination of Phelps, he concluded:

> [Phelps'] neurological examination is normal with the exception of limitation of the range of motion of the spine. Specifically, he has no evidence of weakness, atrophy, drift, sensory loss, or reflex asymmetry. He has no Tinel.

[Tr. 174]. Further, Dr. Brookes reported that the Plaintiff's MRI did not show evidence of recurrent disc protrusion, and he did not have a condition that would require surgery. [Id.]. According to Dr. Brookes, Phelps' symptoms were inconsistent with a left peroneal neuropathy. [Id.].

    2.  <u>Consultative Examiner, Dr. Kenneth Phillips</u>

Dr. Phillips examined the Plaintiff on September 6, 2002, and submitted an RFC assessment. [Tr. 193-203]. Dr. Phillips observed that, while Phelps experienced predominate left thigh pain and some low back pain following surgery, "[p]ost-op studies showed no evidence of recurrent disc and [Phelps] has remained neurologically intact." [Tr. 194]. Further, Dr. Phillips expressed skepticism concerning the degree of limitation alleged by the Plaintiff:

> Claimant reports that he cannot bend or stoop, stand or sit for very long. Claimant's allegation of his restrictions would appear to be somewhat excessive in view of the findings. It would be reasonable that he does have limitations in these activities, but no evidence that bending or stooping would be completely precluded. There is no evidence that standing or sitting would be limited beyond basic work requirements. Overall he is felt to be partially credible in report of his limitations.

[Id.].

    3. <u>Consultative Examiner, Dr. Timothy Gregg</u>

7

Dr. Gregg examined Phelps in November of 2002, and submitted an RFC assessment. [Tr. 204-11]. According to Dr. Gregg, the Plaintiff can sit and/or walk (with normal breaks) for approximately six (6) hours in an eight (8) hour workday, occasionally lift twenty (20) lbs., and frequently lift ten (10) lbs. [Tr. 205]. Dr. Gregg reported that he did not find the Plaintiff's subjective complaints of pain to be fully credible:

> Claimant alleges pain in the low back and thigh. Claimant ultimately had surgery for herniated disc at L5-S1. He continued to complain of pain in the back and thigh. However, testing reveals no evidence of recurrent disc problems. Pain has been considered and does not further limit functional ability. Claimant's alleged restrictions that he cannot bend, stoop or sit for very long have been considered. In light of the objective medical findings, these alleged restrictions are given only partial credibility.

[Id.].

### 4. Consultative Examiner, Dr. Christopher Duncan

Dr. Duncan examined Phelps on November 17, 2006, and submitted an RFC assessment. [Tr. 351-58]. Dr. Duncan made numerous findings that were inconsistent with the degree of limitation reported by Dr. Jenkins. For instance, Dr. Duncan noted that Phelps' neurological examination was "completely normal." [Tr. 352]. Further, Dr. Duncan observed that the Plaintiff could stand on either leg without difficulty, his spine curvature was normal, and there was no evidence of muscle weakness or atrophy. [Id.]. In summary, Dr. Duncan noted:

> Today's physical examination was essentially normal. The patient ambulates with a normal gate and had but slight difficulty forward bending at the waist. He had negative straight leg raise bilaterally. Range of motion studies are good. I do not suspect radiculopathy as there is no focal muscle atrophy, and sensory modalities and deep tendon reflexes are intact... Based on the findings of this orthopedic examination, the patient appears capable of performing at least a moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects.

[Id.].

As the foregoing summary illustrates, the ALJ provided sufficient reasons for discounting Dr. Jenkins' opinion. Specifically, the ALJ focused on the opinion's inconsistency with the consultative examiners' findings. In addition, the ALJ highlighted the evidence which he found detracted from Phelps' credibility. [See Tr. 27-28]. Accordingly, the Court concludes that the ALJ complied with the treating physician rule, and that his decision to reject Dr. Jenkins' opinion is supported by substantial evidence.

B.  THE ALJ'S CREDIBILITY DETERMINATION

The Plaintiff contends that the ALJ did not perform a proper evaluation of his credibility. [R. 10-2 at 12]. Specifically, Phelps argues that the ALJ's credibility determination did not comply with SSR 96-7p. [Id.]. The Defendant Commissioner responds that the ALJ complied with the applicable regulations, and his credibility determination is supported by substantial evidence. [R. 12 at 11].

> SSR 96-7p sets forth a two-step process for evaluating a claimant's symptoms:
>
> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment...that could reasonably be expected to produce the individual's pain or other symptoms. ...Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the claimant's subjective complaints are not substantiated by objective medical evidence, the ALJ must make a credibility determination based on a consideration of the entire case record.

Id. 20 C.F.R. § 404.1529(c) lists certain factors the ALJ is to consider when assessing the intensity and persistence of a claimant's symptoms:

9

    (1)      The claimant's daily activities;

    (2)      The location, duration, frequency, and intensity of the claimant's pain and other symptoms;

    (3)      Precipitating and aggravating factors;

    (4)      The type, dosage, effectiveness, and side effects of any medication which the claimant takes or has taken to alleviate pain or other symptoms;

    (5)      Treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms;

    (6)      Any measures the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

    (7)      Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

Upon review, an ALJ's credibility determination is generally accorded deference, as the ALJ has the "unique opportunity to observe the claimant and judge her subjective complaints." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001); see also Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." ).

    In the present action, the ALJ determined that Phelps' impairments could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. [Tr. 27]. For instance, the ALJ observed that, although Phelps testified he could not afford to follow up with a Dr. Patel for psychiatric treatment, he found the means to smoke two packs of cigarettes per day. [Id.]. The ALJ further noted that Phelps' compliance with physical therapy was sporadic, and he denied

any improvement despite being prescribed "a plethora of medications." [Id.]. Most detrimental to the Plaintiff's credibility, the ALJ observed that there was evidence that he stopped working for reasons unrelated to his alleged back impairment, as he reported in 2000 that he stopped working when "the family business closed." [Id.; see Tr. 363]. Finally, the ALJ referred to the abundance of opinion evidence indicating that Phelps' subjective complaints of pain were not entirely credible. [Tr. 28].

The Court concludes that the ALJ's credibility determination complies with the requirements of SSR 96-7p, and is supported by substantial evidence. Accordingly, Phelps' claim of error must fail.

C.  THE ALJ'S EVALUATION OF THE PLAINTIFF'S MENTAL IMPAIRMENTS

In determining that the Plaintiff's mental impairments were not of a disabling nature, the ALJ followed the special technique set forth in 20 C.F.R. § 1520a. The ALJ found that Phelps had mild limitations in activities of daily living and social functioning, and moderate limitations in concentration, persistence, and pace. [Tr. 25]. The ALJ found no evidence of repeated episodes of decompensation, as Phelps required only one hospitalization. [Id.; see Tr. 393-412]. In addition, the ALJ relied upon the findings of Consultative Examiner Dr. Kenneth Starkey, which indicate that Phelps has a "good" ("more than satisfactory") ability to understand, remember, and carry out simple job instructions, and a "fair" ("limited but satisfactory") ability to make all other occupational, performance, and personal/social adjustments. [Tr. 25, 369-370].

The Plaintiff objects that the ALJ failed to properly evaluate his mental impairments. [R. 10-2 at 14-15]. Specifically, he complains that (1) the ALJ ignored Dr. Starkey's statement that he is unlikely to sustain gainful employment without undergoing months of psychiatric treatment, and (2)

11

the ALJ selectively relied upon the Global Assessment of Functioning (GAF) score submitted by Dr. Starkey, while dismissing GAF scores submitted by other physicians. [Id.].

The Court finds that the Plaintiff's objections lack merit. As it relates to Phelps' objection that the ALJ ignored Dr. Starkey's statement concerning his ability to sustain employment, the Court notes that Dr. Starkey simultaneously submitted a form which indicates that Phelps has a satisfactory ability to perform a wide variety of work-related tasks. [see Tr. 369-70]. Further, Dr. Starkey reported that Phelps was able to focus and sustain attention during the examination, and "is likely to have only mild difficulty sustaining the attention and pace necessary for completing [common work tasks]..." [Tr. 360, 365]. The Court concludes that the ALJ's assessment of Phelps' mental impairments is supported by substantial evidence, and thus his failure to credit Dr. Starkey's statement does not warrant reversal.

Likewise, the Court is unimpressed with Phelps' objection that the ALJ selectively relied upon the Global Assessment of Functioning (GAF) score submitted by Dr. Starkey. Even excluding the ALJ's reliance on this GAF score, substantial evidence supports his determination that Phelps' mental impairments are not of a disabling nature. Thus, the Plaintiff's objection must fail.

D.  SUBSTANTIAL EVIDENCE AND MISCELLANEOUS OBJECTIONS

Having reviewed the record, the Court finds that substantial evidence supports the ALJ's decision to deny benefits. Nonetheless, the Court will address two miscellaneous objections raised by the Plaintiff.

Phelps contends that the ALJ's decision should be reversed because he failed to comply with the Appeals Council's directive to re-contact Dr. Jenkins upon remand. [R. 10-2 at 9]. However, as the Appeals Council's Order reflects, the ALJ was given the option of enlisting the assistance of

counsel in obtaining updated information from the examining sources. [see Tr. 331]. The administrative record reflects that upon remand, Phelps' counsel submitted additional records from a number of physicians, including an updated RFC completed by Dr. Jenkins. [see Tr. 415-17; 391-92]. As the record clearly shows that the ALJ complied with the directive of the Appeals Council, Phelps' objection must fail.

Finally, Phelps refers to the RFC assessment submitted by Dr. Duncan, and objects that the ALJ did not find that Phelps needed a sit/stand option, or was totally restricted from crouching. [R. 10-2 at 11]. Concerning the ALJ's failure to find that Phelps needed a sit/stand option, the Court finds no error. Dr. Duncan reported that Phelps can sit for six (6) hours, stand for three (3) hours, and walk for two (2) hours within an eight (8) hour workday. [Tr. 356]. These findings are consistent with the ALJ's determination that Phelps can perform work at the sedentary level. See 20 C.F.R.§§ 404.1567(a), 416.967(a)(2008). As for the ALJ's failure to find that Phelps was totally restricted from crouching, the Court observes that Dr. Phillips reported that Phelps could "frequently" crouch. [see Tr. 197]. It is the role of the ALJ, and not a reviewing court, to resolve conflicts in evidence. See Hogg at 331. The Court finds that the ALJ's RFC determination is supported by substantial evidence, and thus the Plaintiff's objection cannot prevail.

## V. CONCLUSION

For the foregoing reasons, it is recommended that the Plaintiff's Motion for Summary Judgment [R. 10] be denied, the Defendant Commissioner's Motion for Summary Judgment [R. 12] be granted, and that Judgment be entered affirming the final decision of the Commissioner.

Specific objections to this Report and Recommendation must be filed within ten days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632

(6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed March 20, 2009.

Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge